Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8118 | **DATE** | 9/12/2000 |
| **CASE TITLE** | Bestfoods vs. General Warehouse & Transportation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10/2/2000 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion to dismiss plaintiff's second amended complaint [17-1] is denied in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 13 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 9/12/2000 | |
| IS | courtroom deputy's initials | 00 SEP 12 PM 5: 00 Date/time received in central Clerk's Office | date mailed notice IS mailing deputy initials | |

| | |
|---|---|
| BESTFOODS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GENERAL WAREHOUSE & )<br>TRANSPORTATION CO., )<br>)<br>Defendant. ) | Case No. 99 C 8118<br><br>Magistrate Judge<br>Martin C. Ashman |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Bestfoods, has filed a two-count complaint against Defendant, General Warehouse & Transportation Co. ("GWT"), alleging breach of a bailment contract (Count I) and breach of a statutory duty of care (Count II), 810 ILCS 5/7-204. Before this Court is Defendant's motion to dismiss Counts I and II of the complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. 28 U.S.C. § 636(c); LOCAL R. 73.1. For the reasons that follow, Defendant's motion to dismiss is denied as to both counts.

### I. Background

The following allegations, which are assumed as true for motion to dismiss purposes, are taken from Plaintiff's complaint. Bestfoods, a distributor and marketer of food products, entered

24

into a Public Warehousing Agreement ("Agreement") with GWT, a profit-based warehousing company, whereby GWT agreed to receive and store Bestfoods' food products and Bestfoods agreed to pay GWT for storage and handling charges. (Pl.'s 2d Am. Compl., ¶¶ 6-8.) Under Section 13(a) of the Agreement, GWT agreed to "exercise such care in regard to the stored goods as a reasonable careful man would exercise under like circumstances . . . ." (Pl.'s 2d Am. Compl., Ex. A [hereafter "Agreement"], § 13.) Bestfoods believes that a reasonable Warehouseman would have regularly rotated Bestfoods' inventory such that older food products would be the first to be shipped out of the warehouse.

Through its own investigation, Bestfoods discovered that GWT had failed to rotate Bestfoods' inventory, causing thousands of cases of food product to reach expiration of product code dates. GWT was aware that Bestfoods' products stored in GWT's warehouse were for human consumption. The complaint alleges that GWT's failure to rotate Bestfoods' inventory constituted a breach of GWT's duty of care.

After its investigation, Bestfoods transferred its inventory at its own expense from GWT's warehouse to another warehouse between January and February 8, 1999. Bestfoods alleges that as a result of GWT's breach, Bestfoods incurred damages to its inventory and extra-contractual storage, transportation, and disposal costs.

The Agreement obligates Bestfoods to make a seasonable written claim as a prerequisite to maintaining an action against GWT. Section 14 of the Agreement provides:

> (a) Claims by Client and all other persons must be presented in writing to Warehouseman within a reasonable time and in no event longer than 60 days after delivery of the goods by Warehouseman, or 60 days after Client or the last known holder of a negotiable warehouse receipt is notified by Warehouseman that loss or injury to the goods has incurred [sic], whichever time is shorter.
>
> (b) No action may be maintained by Client or others against Warehouseman for loss or injury to the goods stored unless timely written claim has been given as provided in paragraph (a) of this and unless such action is commenced either within nine months after date of delivery by Warehouseman, or within nine months after Client of record or the last known holder of a negotiable warehouse receipt is notified that loss or injury to part or all of the goods has occurred, whichever time is shorter.
>
> (c) When goods have not been delivered, notice may be given of known loss or injury to the goods by mailing a registered or certified letter to Client of record or to the last known holder of a negotiable warehouse receipt. Time limitation for presentment of claim in writing and maintaining of action after notice begin on the date of mailing of such notice by Warehouseman.

(Agreement, § 14.) Liability and damages are limited by Section 13(a):

> (a) Warehouseman shall not be liable for any loss or injury to goods stored, however caused, unless such loss or injury resulted from the failure by Warehouseman to exercise such care in regard to the stored goods as a reasonable careful man would exercise under like circumstances and Warehouseman is not liable for damages which could not have been avoided by the exercise of such care.

Bestfoods discovered damage to its food product sometime before February of 1999. (Pl.'s 2d Am. Compl., ¶ 16.) Bestfoods filed this lawsuit on December 14, 1999.

## II. Discussion

### A. Motion To Dismiss Standard

In ruling on a motion to dismiss, the court must construe the pleadings in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), taking as true all well pleaded allegations and any reasonable inferences therefrom in the complaint, *see Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995). Accordingly, a motion to dismiss should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under the federal system of "notice pleading," a plaintiff need only furnish "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence And Coordination Unit*, 507 U.S. 163, 168 (1993).

### B. Count I Adequately Alleges a Breach of Contract Claim.

Section 14(b) of the Agreement imposes two conditions on Plaintiff's right to bring an action against Defendant for loss or injury to Plaintiff's goods (we have added our own alphanumeric designations to Section 14(b) for convenience and future reference):

(1) Plaintiff must first give written notice to GWT of a claim "within a reasonable time" and in no event longer than 60 days
 [a] after "delivery of goods by [GWT]" or
 [b] after Plaintiff "is notified by [GWT]" that loss or injury of goods has occurred; **and**
(2) the action must be commenced either
 [a] within nine months after "delivery by [GWT]" or
 [b] within nine months after Plaintiff "is notified that loss or injury . . . has occurred."

(Agreement, §§ 14(a) & (b).) "When goods have not been delivered," Section 14(c) provides that the claim presentment deadline and filing deadline are not triggered until notice of loss or injury has been given by registered or certified letter to Plaintiff. (*Id.*, § 14(c).)

Defendant argues that Plaintiff's complaint is barred by Section 14(b) because Plaintiff's removal of goods from Defendant's warehouse constituted a "delivery" and because Plaintiff had notice of injury to its goods more than nine months prior to filing this lawsuit. Plaintiff responds that its removal of goods from Defendant's warehouse was arguably not a "delivery," and that the only basis for dismissing Count I as untimely would be if Plaintiff did not present its claim to

Defendant "within a reasonable time" as set forth in Section 14(a), and reasonableness is a quintessential issue for a fact finder.

As stated earlier, Plaintiff must give seasonable written notice of a claim of injury and it must timely file a lawsuit. Both provisions are triggered by a "delivery" of goods by the defendant (see Sections 14(b)(1)[a] and 14(b)(2)[a]). But whereas the written-notice provision is triggered after Plaintiff "is notified by Warehouseman" of a loss or injury, the lawsuit-filing provision is triggered only after Plaintiff "is notified" of a loss or injury. The words "by Warehouseman" are noticeably absent from the lawsuit-filing provision. The written-notice provision is also triggered when Plaintiff "is notified by" Defendant that a loss or injury has occurred, (see Section 14(b)(1)[b]), but that did not happen here, so this provision is not applicable. Therefore, the critical inquiry is whether there was a "delivery of goods by Warehouseman" so as to trigger the lawsuit-filing time clock.

1. Whether Bestfoods' Removal of Goods From GWT's Warehouse Constituted a "Delivery" Is Potentially Subject To More Than One Reasonable Interpretation.

Defendant argues that a "delivery of goods by Defendant" occurred when Plaintiff took custody and possession of them before removing them from Defendant's warehouse to another warehouse. Defendant concedes that the term "delivery" is not

defined anywhere in the Agreement, (Def.'s Reply, at 2), which means that the ordinary dictionary definition of "delivery" should apply here, according to Defendant. Plaintiff responds that the Agreement distinguishes between a "delivery" of goods and a "removal" of goods, and that the meaning of "delivery" is a matter of the intent of the parties as expressed in the Agreement. For the reasons below, this Court concludes that there is a possibility that the meaning of the term "delivery" is ambiguous, as to which reasonable minds could honestly differ, and therefore Count I cannot be dismissed.

Under Illinois law, the primary objective in construing the terms of a contract is to give effect to the parties' intent. *Home Ins. Co. v. Chicago and Northwestern Transp. Co.*, 56 F.3d 763, 767 (7th Cir. 1995) (citing *Schek v. Chicago Transit Auth.*, 247 N.E.2d 886, 888 (Ill. 1969)). In Illinois, "[a]n instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (quoting *Flora Bank & Trust v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 5th Dist. 1991)). A contractual provision is ambiguous if it is subject to "more than one reasonable interpretation." *Bourke*, 159 F.3d at 1036. Contract terms are not read in isolation;

rather they are construed in light of the contract as a whole, giving effect to all contractual provisions. *See O'Rourke v. Access Health, Inc.*, 668 N.E.2d 214, 220 (Ill. App. Ct. 1st Dist. 1996).

A contract term can be susceptible to at least two kinds of ambiguity. "Latent" or "extrinsic" ambiguity arises when the terms are clear taken by themselves, but the surrounding circumstances create inconsistent interpretations. *See, e.g., FDIC v. W.R. Grace & Co.*, 877 F.2d 614 (7th Cir. 1989). "Manifest" or "intrinsic" ambiguity arises when the express language of the contract itself is fairly susceptible to more than one reasonable reading. *See Bourke*, 159 F.3d at 1037. "Where there is an ambiguity and if, after considering the contract language in light of parol evidence and rules of construction, doubt still remains as to the meaning of the contract, then the question of interpretation must be left to the trier of fact." *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill App. Ct. 2d Dist. 1997).

The term "delivery" arguably presents an intrinsic ambiguity which is fairly susceptible to having more than one meaning. Plaintiff argues that the Agreement appears to contemplate that a "delivery" involves moving goods to the warehouse door. Section 8 of the Agreement provides that handling charges, which are invoiced to Plaintiff "on receipt of goods," cover the labor involved in "receiving goods at warehouse door, placing goods in

storage and **returning goods to warehouse door** . . . ."
(Agreement, § 8(a).) Paragraph E of a rider to the Agreement contemplates that Plaintiff can "enter [Defendant's] facility and **remove its goods at its own expense.**" (Pl.'s 2d Am. Compl., Ex. B, § E.) Section 5(c) and Section 7(b) of the Agreement state that Defendant may "remove" the goods from the warehouse. (Agreement, §§ 5(c) & 7(b).)

On the other hand, Defendant argues that Section 5(b) of the Agreement supports its proposed definition that "delivery" means a transfer of care, custody, and control of goods. Section 5(b) recites that "[s]torage charges become applicable on the date that **Warehouseman accepts care, custody and control** of the goods . . . ." (*Id.*, § 5(b).) In other words, if a delivery to the warehouse occurs when the *warehouseman* accepts care, custody, and control of the goods, then contrariwise, a delivery from the warehouse occurs when *Plaintiff* accepts care, custody, and control of the goods. But this interpretation ascribes a meaning to the term "delivery" that is not ascertainable from the four corners of the Agreement.

Without reference to any extrinsic evidence, there are several potential interpretations of the term delivery. Under Plaintiff's interpretation, a delivery requires returning the goods to the warehouse door by Defendant, but where Plaintiff returns its own goods to the warehouse door, a removal has occurred. Under Defendant's interpretation, a delivery occurs

whenever either party accepts custody, care, and control of goods. These opposing interpretations raise the possibility that the term delivery is ambiguous. Extrinsic evidence may need to be considered in order to shed light on the meaning of "delivery" and to ascertain whether any ambiguity exists.

### 2. The Seasonable Notice Provisions.

Although the inability to determine conclusively the meaning of "delivery" as a matter of law precludes the granting of Defendant's motion on Count I, it is useful to identify several issues pertaining to the notification aspects of Section 14(b). As stated earlier, Defendant never notified Plaintiff of any loss or injury to Plaintiff's goods, so Section 14(b)(1)[b] is inapplicable here. Thus, if it is determined that Plaintiff's removal of goods from Defendant's warehouse did not constitute a delivery, then "[c]laims by [Plaintiff] . . . must be presented in writing to [Defendant] within a reasonable time . . . ." (Agreement, § 14(a).) But this seasonable-notification provision presents some difficulties, not the least of which is its failure to identify what action, event, or occurrence triggers Plaintiff's obligation to make a claim. Plaintiff must make a claim within a reasonable time of what? There are myriad possibilities (one of which is expressed in Section 14(c) of the Agreement, but that scenario did not happen here), so the intent of the parties to this standard-form warehousing agreement will

have to be examined if no delivery is determined to have occurred.

Finally, we turn our attention to the nine-month notice requirement expressed in the lawsuit-filing provision. This provision applies if it is determined that a delivery of goods did not occur and that Plaintiff gave seasonable written notice of something (we do not yet know what). As noted before, this provision conspicuously omits the words "by Warehouseman" that appear in the written-notice provision above it. Thus, this provision does not preclude the possibility that Plaintiff can notify itself of a loss or injury to goods, and that is precisely what happened here. Here, Plaintiff gained knowledge of a loss or injury to its food product as a result of its own investigation, so for purposes of Section 14(b)(2)[b], Plaintiff was, as a matter of law, "notified that a loss or injury . . . has occurred."

Plaintiff relies on *W.A. Taylor & Company v. Griswold & Bateman Warehouse* as support that the lawsuit-filing deadline expressed in Section 14(b)(2)[b] was never triggered. 742 F. Supp. 1398, 1411 (N.D. Ill. 1990). In *W.A. Taylor*, like here, the plaintiff discovered damage to its goods through its own investigation, and the defendant argued that the plaintiff's lawsuit was untimely in accordance with a warehouse provision identical to Section 14. The court concluded that "where, as here, a formal notice of loss was never tendered by the warehouseman and the losses were discovered by the complaining

party's own investigation, the time clocks . . . never began to tick so as to define the particularized outside limits for 'a reasonable time.'" *Id.* at 1411. This Court disagrees that the notice requirement of the lawsuit-filing provision is not satisfied when the warehouseman fails to tender a formal notice of loss to a complaining party. Because the words "by Warehouseman" do not appear in that provision, the complaining party is not precluded from obtaining notice by gaining knowledge through its own actions of a loss or injury to its goods. This Court concludes that where a complaining party discovers through its own investigation a loss or injury to its goods, that party "is notified that loss or injury . . . has occurred" as set forth in Section 14(b).

The dispositive issue is whether Plaintiff's removing its own damaged goods from Defendant's warehouse constituted a delivery under the Agreement. Because the meaning of delivery cannot be determined as a matter of law at this time as it is potentially susceptible to more than one interpretation, Defendant's motion to dismiss Count I is denied.

C. **The Moorman Doctrine Does Not Supplant a Contractually and Statutorily Defined Duty of Care.**

Defendant also attacks Count II, which seeks to hold Defendant liable as a warehouseman for damages to Plaintiff's goods caused by Defendant's alleged failure to exercise a

statutorily defined duty of care, in accordance with Section 7-204(1) of the Uniform Commercial Code, 810 ILCS 5/7-204(1). Defendant argues that Count II is barred by the "Moorman doctrine" which bars tort recovery for purely economic losses. *See Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 449-50 (1982). Plaintiff responds that liability under Section 7-204(1) is independent of any liability which may arise from the Agreement, and therefore Count II is not barred by the Moorman doctrine. Defendant's reply does not address this point.[1]

Section 7-204(1) imposes a statutory duty of care on a warehouseman to its clients. The general standard of conduct is as follows:

> A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

810 ILCS 5/7-204(1). The standard of care owed by Defendant to Plaintiff is defined in Section 13(a) of the Agreement, which parrots Section 7-204's statutory standard of care. (Agreement, § 13(a).) Thus, Defendant owed Plaintiff a duty of reasonable care as expressed in Section 13(a) of the Agreement (*see* Count I) and in Section 7-204 of the Illinois statutes. *Accord W.A.*

---

[1] Strangely, Defendant does not attack Count I, which alleges a breach of a *contractual* duty of care, on *Moorman* grounds. Defendant never explains why a contractually defined duty of care avoids the Moorman doctrine but one defined by statute does not.

- 13 -

*Taylor & Co. v. Griswold & Bateman Warehouse*, 754 F. Supp. 1260, 1265 (N.D. Ill. 1990).

Because both Illinois statutory law and the Agreement specifically impose a duty of care on Defendant, the Moorman doctrine, which holds that there is no common-law duty of care, does not apply. Here, there *is* a duty of care expressed both in the Agreement and in the Illinois statutes. Defendant's position that the Moorman doctrine somehow supersedes a statutory duty of care is untenable. Accordingly, Defendant's motion to dismiss Count II is also denied.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [17-1] is denied in its entirety.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
**Dated:** September 12, 2000.     United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| JEFFREY H. BERGMAN, Esq.<br>MARLENE A. GIBSON, Esq.<br>D'Ancona & Pflaum, L.L.C.<br>111 East Wacker Drive<br>Suite 2800<br>Chicago, IL  60601-4205<br><br>Attorneys for Plaintiff | JOHN F. HORVATH, Esq.<br>DAVID L. POINDEXTER, Esq.<br>Horvath & Lieber, P.C.<br>300 West Washington Street<br>Suite 1700<br>Chicago, IL  60606<br><br>Attorneys for Defendant |